IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

ROGER MUKUNA, JR.,            )
                              )
        Plaintiff,            )
                              )
    v.                        )    1:11cv493 (LMB/IDD)
                              )
CPL GIBSON, G.A. #A344 MWAA POLICE )
OFFICER, MWAA, et al.,        )
                              )
        Defendants.           )

MEMORANDUM OPINION

Before the Court are Motions to Dismiss by defendants Cpl. Gibson, the Metropolitan Washington Airports Authority, and the Metropolitan Washington Airport[s] Authority's Police Department [Dkt. Nos. 14, 19, and 25, respectively].[1] For the following reasons, the defendants' motions will be granted, and this civil action will be dismissed.

I. BACKGROUND

On May 6, 2011, plaintiff Roger Mukuna, Jr. ("Mukuna"), proceeding pro se, filed a civil Complaint against "CPL

---

[1] Plaintiff Mukuna was given a proper Roseboro notice by each party pursuant to Local Rule 7(K) and Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975), and he filed an opposition to defendants' Motions to Dismiss. However, Mukuna failed to appear at 10:00 a.m. on August 19, 2011 for oral argument. The other pro se party, Mathias Kouadio, did appear. Apparently, Mukuna appeared at the courthouse around 10:20 a.m., after court had recessed for the day. The affirmative motions filed by the defendants and the oral information provided during the hearing nevertheless provide sufficient information for this Court to render a decision.

[Corporal] Gibson G.A[.] #A344, MWAA Police Officer" (hereinafter "Gibson"), the Metropolitan Washington Airports Authority ("MWAA" or "the Airports Authority"), the MWAA Police Department, and Mathias Kouadio ("Kouadio"), alleging malicious prosecution.  On June 24, 2011, with leave of Court, plaintiff filed an Amended Complaint against those same defendants, asserting causes of action for malicious prosecution and violation of 42 U.S.C. § 1983 (Count One), "defamation of character" (Count Two), and "damage of economic welfare" (Count Three).  See Pl.'s Amend. Compl. [Dkt. No. 7] ¶¶ 1-12.

The factual assertions in Mukuna's Amended Complaint center on his arrest by Gibson, an officer of the MWAA Police Department, in or about May 2010 for the alleged theft of an income tax refund belonging to Kouadio, whom Mukuna claims was his former business partner.  See id. ¶¶ 2-6.  Mukuna asserts that the arrest was unlawful, because Kouadio had given him permission to take his tax refund to retire a debt owed from Kouadio to Mukuna, and that the subsequent arrest and criminal charges against him were therefore solely made "to pressure and scare the plaintiff [Mukuna] using [Gibson's] police officer status to give him [Kouadio] the money, thus escaping his promise and obligations."  Id. ¶ 2.  Plaintiff further alleges that Kouadio and Gibson defamed him on May 7, 2010 in a press conference and a criminal complaint, thereby damaging his

2

reputation and "ruin[ing] [his] economic welfare." Id. ¶¶ 7-9. Plaintiff seeks total monetary damages in an amount exceeding $1 million. Id. at 6-7.

On July 13, 2011, Kouadio, also proceeding pro se, filed an Amended Answer and Counterclaim. In that document, Kouadio denies that he was ever plaintiff's business partner or that he ever agreed to allow plaintiff to collect his tax refund. See Def. Kouadio's Amend. Answer to Amend. Compl. [Dkt. No. 24] ¶ 1. Kouadio's Amended Answer also asserts a counterclaim against Mukuna, alleging that "Mukuna is still in possession of [his] . . . 2008 taxes [sic] refund," and seeking reimbursement of the $8,600 which Kouadio alleges that Mukuna "fraudulently took from [him]." Id. at 2-3.

Defendants Gibson, MWAA, and the MWAA Police Department have not filed Answers in this civil action. Instead, those defendants filed motions to dismiss [Dkt. Nos. 14, 19, and 25], seeking dismissal of all claims against them on grounds of immunity and failure to state a claim.

## II. STANDARDS OF REVIEW

Under Fed. R. Civ. P. 12(b)(6), a complaint should not be dismissed "unless it appears certain that [plaintiff] can prove no set of facts that would support his claim and would entitle

him to relief." Smith v. Sydnor, 184 F.3d 356, 361 (4th Cir. 1999). In evaluating a motion to dismiss under Rule 12(b)(6), the Court must accept all of the complaint's well-pleaded allegations as true and view them in a light most favorable to the plaintiff. Smith, 1184 F.3d at 361. However, that requirement applies only to facts, not to legal conclusions. Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009). In addition, if "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' - that the pleader is entitled to relief." Id. at 1950. "Factual allegations must be enough to raise a right of relief above the speculative level, on the assumption that all of the allegations in the complaint are true." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Accordingly, a party must "nudge[] their claims across the line from conceivable to plausible" to survive a Rule 12(b)(6) motion to dismiss. Id. at 570. Furthermore, under Fed. R. Civ. P. 12(b)(1), the plaintiff bears the burden of persuasion to establish subject matter jurisdiction, and must prove by a preponderance of the evidence that jurisdiction is proper in federal court. See, e.g., Stawn v. AT&T Mobility, 530 F.3d 293, 296 (4th Cir. 2008); United States ex rel. Vuyyuru v. Jadhav, 555 F.3d 337, 347-48 (4th Cir. 2008), cert. denied, 130 S. Ct. 229 (2009). The district courts of the United States are courts

of limited subject matter jurisdiction, possessing only the jurisdiction granted to them by the United States Constitution and by federal statutes. <u>Exxon Mobil Corp. v. Allapattah Servs., Inc.</u>, 545 U.S. 546, 552 (2005); <u>Kokkonen v. Guardian Life Ins. Co. of Am.</u>, 511 U.S. 375, 377 (1994). Accordingly, when a district court lacks subject matter jurisdiction over an action, the action must be dismissed. <u>Arbaugh v. Y & H Corp.</u>, 546 U.S. 500, 506-07 (2006).

### III.  DISCUSSION

**A.  Defendant Gibson**

Gibson's Motion to Dismiss [Dkt. No. 14] will be granted in its entirety, and all causes of action against him will be dismissed.

#### 1. Count One

Although Mukuna's <u>pro se</u> Amended Complaint is not a model of clarity, he appears to allege in his "First Cause of Action (Malicious Prosecution)" that Gibson violated his constitutional rights under 42 U.S.C. § 1983 in connection with the alleged malicious prosecution, presumably by arresting Mukuna in violation of Mukuna's Fourth Amendment rights. <u>See</u> Pl.'s Amend. Compl. ¶ 6. That allegation, however, fails to state a plausible claim to relief, and Gibson is in fact entitled to qualified immunity on Count One.

5

A police officer is entitled to qualified immunity when, on the facts alleged, he did not violate the plaintiff's clearly established constitutional rights. See, e.g., McKinney v. Richland Cnty. Sheriff's Dep't, 431 F.3d 415, 417 (4th Cir. 2005). It is a matter of black letter law that arrests based on probable cause do not violate the Constitution, see id. at 418, and a police officer has probable cause to arrest an individual whenever "the facts and circumstances within [the officer's] knowledge . . . [a]re sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense," Beck v. Ohio, 379 U.S. 89, 91 (1964). The Fourth Circuit has also held that a victim's identification of a suspect is sufficient to support an arrest warrant, and that where there was "sufficient evidence for an arrest warrant to be issued, . . . then by definition there was probable cause." McKinney, 431 F.3d at 418 n.3; see also Torchinsky v. Siwinski, 942 F.2d 257, 264 (4th Cir. 1991) ("It is surely reasonable for a police officer to base his belief in probable cause on a victim's reliable identification of his attacker. Indeed, it is difficult to imagine how a police officer could obtain better evidence of probable cause . . . ."). Finally, a lack of probable cause is also a requirement to maintain a cause of action for malicious prosecution under Virginia law. See Reilly

6

v. Shepherd, 273 Va. 728, 731 (2007) (citing Baker v. Elmendorf, 271 Va. 474, 476 (2006)).

Here, the allegations in the Amended Complaint establish that the cause of action against Gibson is implausible, and that Gibson is entitled to qualified immunity. Specifically, the Amended Complaint alleges that Kouadio contacted Gibson and told him that Mukuna had stolen his income tax refund. See Pl.'s Amend. Compl. ¶¶ 2, 7. Gibson then spoke with Mukuna several times about the allegation, and Mukuna admitted taking the tax refund, but claimed that he had used it to retire a debt. Id. at ¶ 2. Kouadio, however, denied ever agreeing to give Mukuna his tax refund, and Gibson ultimately arrested Mukuna on an arrest warrant obtained from the Loudoun County General District Court. See id. at ¶¶ 4-6; Aff. of Roger Mukuna, Jr. in Resp. to Mathias Kouadio at Ex. 3 (arrest warrant and criminal complaint). Under these circumstances, Gibson plainly had probable cause to execute the facially valid arrest warrant issued by the Loudoun County magistrate. Accordingly, Mukuna's cause of action against Gibson for malicious prosecution and violation of 42 U.S.C. § 1983 must be dismissed.

2. Count Two

Mukuna's "Second Cause of Action" alleges that Gibson defamed him by "fabricating" statements in the criminal complaint that he filed in the Loudoun County General District Court. See Pl.'s

Amend. Compl. at ¶ 8. That allegation is also implausible, and Gibson is entitled to qualified privilege for drafting the criminal complaint.

First, under Virginia law, a complaint alleging defamation must contain the exact alleged defamatory words:

> Good pleading requires that the exact words spoken or written must be set out in the declaration in haec verba. Indeed, the pleading must go further, -- that is, it must purport to give the exact words. Not only must the exact words be charged, but they must be proven, or at least a sufficient number proven to make out a good cause of action. Words equivalent or of similar import are not sufficient.

Fed. Land Bank of Balt. v. Birchfield, 173 Va. 200, 215 (1939). In this case, however, Mukuna's Amended Complaint does not include the exact defamatory (or rather, libelous) words that Gibson allegedly wrote. Indeed, it does not even describe the specific charges alleged in the criminal complaint. The Amended Complaint therefore does not meet the substantive pleading requirements set forth in Birchfield.

Moreover, Virginia has long recognized a qualified privilege defense to claims of defamation, and a police officer like Gibson is plainly entitled to such a qualified privilege in filing a criminal complaint. See Morris v. Massingill, 61 Va. Cir. 532, 536 (Va. Cir. Ct. 2003) (citing Taylor v. Grace, 166 Va. 138, 144 (1936) ("A communication, made in good faith, on a subject matter in which the person communicating has an interest, or owes a duty . . . is qualifiedly privileged if made to a person having a

corresponding interest or duty.")). Here, Gibson had an obvious interest in and a legal duty to communicate the circumstances and nature of the charges to the Loudoun County magistrate, and the magistrate had a corresponding interest and duty to receive that information and determine whether to issue an arrest warrant. Indeed, filing criminal complaints and obtaining arrest warrants are standard responsibilities of all police officers, and such officers are therefore unquestionably entitled to the qualified privilege defense in circumstances such as these.

If such a qualified privilege is applicable, then it may only be defeated by a plaintiff's showing, by clear and convincing evidence, that the defendant acted "maliciously," with "motives of personal spite, or ill-will, independent of the occasion on which the communication was made." Morris, 61 Va. Cir. at 536 (citing The Gazette, Inc. v. Harris, 229 Va. 1, 18 (1985)). In this case, Mukuna has not plausibly alleged that Gibson harbored any personal spite or ill will toward him, nor that Gibson was motivated by hatred, revenge, a desire to injure Mukuna, or any other mental state equating to common law malice. Indeed, all of the allegations in the Amended Complaint that could generously be read to constitute malice are either alleged against Kouadio alone, are based on hearsay, or are completely fantastical, implausible, and without any factual support. See Pl.'s Amend. Compl. at ¶¶ 3-4, 6, 12. In short, plaintiff's

Amended Complaint does not come close to meeting the pleading standards of Iqbal and Twombly, and the cause of action for "defamation of character" against Gibson will therefore be dismissed.

### 3. Count Three

Finally, Mukuna's "Third Cause of Action" attempts to state a claim for "damage of economic welfare." Neither Virginia nor the federal courts recognize a cause of action for "damage of economic welfare." Although economic damages are damages that may be claimed in a lawsuit such as Mukuna's, they do not support a separate cause of action. Indeed, a fair reading of Mukuna's Amended Complaint suggests that he intended to plead for economic damages arising out of the torts of malicious prosecution and defamation. As such, Mukuna's third cause of action, to the extent that it attempts to set forth a distinct claim for economic damages separate and apart from Mukuna's tort claims, must be dismissed.

### B. Defendants MWAA and MWAA Police Department

Plaintiff's claims against the MWAA and the MWAA Police Department must also be dismissed in their entirety on grounds of immunity and failure to state a plausible claim.

Under Virginia law, the MWAA is "not [] liable for any torts occurring in the performance of a governmental function." Va. Code Ann. § 5.1-173(B) (2011). A governmental function "may be

characterized as the exercise of an entity's political, discretionary, or legislative authority" regarding a matter "directly tied to the health, safety, and welfare of the citizens." Alpine Air, Inc. v. MWAA, 62 Va. Cir. 215, 217 (Va. Cir. Ct. 2003). Moreover, the Virginia Supreme Court has held that the Airports Authority's operation of "emergency public services," such as ambulance responses to emergency calls, constitutes an exercise of governmental functions that confers immunity on the MWAA. See Couplin v. Payne, 270 Va. 129, 133 (2005).

Here, Mukuna's arrest by an MWAA police officer clearly occurred in the performance of a governmental function. The MWAA's police department was created by statute, and as such, the exercise of police powers thereunder arises from the lawful exercise of legislatively granted authority. See Va. Code Ann. § 5.1-158 (2011). Furthermore, police department functions, including the investigation of possible crimes and the arrest of suspects, are directly tied to the health, safety, and welfare of the citizens, just as are emergency public services. Accordingly, all torts allegedly committed by the MWAA or its police department were committed in the performance of a governmental function, and the MWAA is entitled to immunity from those claims.

Moreover, the MWAA is also immune from Mukuna's claims under 42 U.S.C. § 1983. It is well settled that local governments and municipalities may not be sued under 42 U.S.C. § 1983 for injuries inflicted by their employees absent an official custom, policy, or practice in the municipality that proximately caused the deprivation of the plaintiff's constitutional rights. See Najib Gerdak v. Jane Doe, No. 1:10cv908, 2010 U.S. Dist. LEXIS 107326, at *9 (E.D. Va. Oct. 7, 2010) (Cacheris, J.) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978)). In other words, liability under 42 U.S.C. § 1983 cannot lie against a governmental entity solely on the basis of a theory of respondeat superior. See Adonis Wright v. Fairfax Cnty., No. 01:09cv949, 2010 U.S. Dist. LEXIS 61788, at *13 (E.D. Va. June 22, 2010) (Hilton, J.) (citing Monell, 436 U.S. at 692).

The MWAA was created by statute to manage and operate the Ronald Reagan National and Washington Dulles International airports. See 49 U.S.C. § 49101 (2006); Va. Code Ann. § 5.1-153 (2011). As a statutorily created authority serving a public, governmental function, the MWAA was granted the protections of the sovereign in its exercise of governmental functions. See Va. Code Ann. § 5.1-173(B) (2011). As such, Virginia courts have considered the MWAA to be the equivalent of a municipality for immunity purposes. See Gray v. Va. Sec'y of Transp., 74 Va. Cir. 30, 32 (Va. Cir. Ct. 2007), rev'd on other grounds, 276 Va.

93 (2008) ("Pursuant to Va. Code Ann. § 5.1-152 to 178, MWAA must be treated like a municipality, as it performs governmental functions, for which it is immune."); Alpine Air, 62 Va. Cir. at 217 ("The statutory grant of immunity is equivalent to the immunity that municipalities enjoy under Virginia common law.").

Here, Mukuna's Amended Complaint has alleged nothing more than respondeat superior liability against the MWAA. See Pl.'s Amend. Compl. ¶ 11. There is absolutely no allegation in the Amended Complaint that the MWAA had any official custom, policy, or practice to violate the constitutional rights of citizens; rather, Mukuna has sued the MWAA solely because Gibson, the officer who arrested him, is an officer of the MWAA Police Department. Under these circumstances, the MWAA is immune from all of Mukuna's claims under 42 U.S.C. § 1983, and all such claims will be dismissed.

Finally, to the extent that Mukuna is attempting to assert a separate claim against the MWAA Police Department, that claim will be dismissed for all of the reasons stated above, and also because the department is non sui generis and therefore lacks the capacity to be sued. Under Virginia law, which applies in this context,[2] "an operating division of a governmental entity,

---

[2] Where a party is neither an individual nor a corporation, the party's capacity to be sued is determined by the law of the state where the federal district court sits. See Fed. R. Civ. P. 17(b)(3); see also Thompson v. City of Danville, 2011 U.S. Dist. LEXIS 59698, at *13-14 (W.D. Va. June 3, 2011).

[such as the MWAA,] cannot be sued unless the legislature has vested the operating division with the capacity to be sued." Guerrero v. Deane, 1:09cv1313, 2010 U.S. Dist. LEXIS 14468, at *51-52 (E.D. Va. Feb. 19, 2010) (Cacheris, J.) (holding that Price William County's police department could not be sued separately because it exists merely as "an arm of Prince William County"). Here, the MWAA Police Department was created by statute as a division within the Airports Authority, and its officers were therefore granted all of the powers vested in municipal and other police officers under the Virginia Code. See Va. Code Ann. § 5.1-158 (2011). Nothing in the statute, however, states that the MWAA Police Department can be sued as a separate entity in its own name, and the law in Virginia is therefore clear that the department is "non sui generis, meaning [it] simply do[es] not have the capacity to be sued." Thompson, 2011 U.S. Dist. LEXIS 59698, at *14; see also Burnley v. Norwood, 3:10cv264, 2010 U.S. Dist. LEXIS 78666, at *15-16 (E.D. Va. Aug. 4, 2010) (Hudson, J.) (holding that the Richmond City Police Department could not be sued because it was not "vested with such a capacity" by the General Assembly and is merely a part of the City of Richmond). All claims against the MWAA Police Department will therefore be dismissed.

### C. Defendant/Counter-Claimant Kouadio

Finally, although defendant Kouadio has not filed a motion to dismiss in this case, the Court will <u>sua sponte</u> dismiss all claims against him, along with his counterclaim against Mukuna, for lack of subject matter jurisdiction and failure to state a claim.

#### 1. Count Three

As explained above, Mukuna's claim for "damage of economic welfare" does not state a cognizable cause of action. Any economic damages to which Mukuna may be entitled would be available as remedies for the torts of malicious prosecution (Count One) and/or defamation (Count Two), as there is no separate cause of action for "damage of economic welfare." Consequently, Count Three must be dismissed.

#### 2. Counts One and Two and Kouadio's counterclaim

Counts One and Two, alleging malicious prosecution and defamation of character respectively, are purely state law claims. As discussed above, federal courts are courts of limited jurisdiction. When no questions of federal law are in a lawsuit, the action can go forward in federal court only if the requirements for diversity jurisdiction are satisfied pursuant to 28 U.S.C. § 1332. In this case, the parties are of diverse citizenship because plaintiff is a citizen of Virginia while Kouadio is a citizen of Maryland. <u>See</u> Pl.'s Amend. Compl. ¶ 1.

However, Mukuna has not plausibly pleaded an amount in controversy in excess of $75,000.00, exclusive of interest and costs, as required by 28 U.S.C. § 1332(a).

To be sure, plaintiff prays for relief in the sum of $100,000.00 against Kouadio on his defamation claim, alleging, inter alia, damage to his reputation, "anguish and worries[, and] legal costs," Pl.'s Amend. Compl. at 6, and seeks an additional $100,000.00 on his malicious prosecution claim, "for conspiracy, legal costs and punitive damages," id. However, Mukuna's Amended Complaint does not include any specific factual allegations rendering these damages plausible, or even establishing that Mukuna sustained reputational, emotional, or legal harms. Rather, aside from wholly conclusory assertions regarding reputational harm, the only particular factual assertion that Mukuna has made concerning his alleged injuries is the following:

> I was not hired by United Airlines because of the arrest on my criminal record, thus, I am now finding myself in [sic] situation with $112,000.00 in student loan [sic] I do not know how to repay back without high paying job all this because of CPL Gibson GA of MWAA PD and Mathias Kouadio's conspiracy.

Id. at 4.

Such "for want of a nail the kingdom was lost" allegations are entirely speculative and are insufficient to support a plausible allegation of damages exceeding the amount of $75,000.00. Moreover, during oral argument, Kouadio stated that

16

both he and Mukuna are still employed by Air Wisconsin, rendering Mukuna's damages claim even more speculative. For these reasons, the Court finds that it lacks subject matter jurisdiction to adjudicate Mukuna's state law malicious prosecution and defamation claims, and these claims will be dismissed without prejudice.[3]

Similarly, this Court clearly does not have subject matter jurisdiction over Kouadio's counterclaim, in which he seeks a monetary judgment against Mukuna in the amount of $8,600.00, "representing my [Kouadio's] 2008 tax[] refund." Def. Kouadio's Amend. Answer to Amend. Compl. at 3. Kouadio's counterclaim, which sounds in fraud, breach of contract, or conversion, is also a purely state law claim, and Kouadio's demand of monetary damages in the sum of $8,600.00 is plainly insufficient under 28 U.S.C. § 1332(a). That counterclaim will therefore also be dismissed without prejudice.[4]

---

[3] These counts, as well as Kouadio's counterclaim, are dismissed without prejudice to allow the parties to refile these claims in an appropriate state court if they choose to continue suing each other.

[4] In the interest of conserving judicial resources, this Court declines to exercise supplemental jurisdiction over plaintiff and Kouadio's state law claims under 28 U.S.C. § 1367, given the small amount of damages at stake. Neither party is prejudiced by this decision as they retain the ability to refile their claims in state court.

## IV.   CONCLUSION

For the reasons stated above, defendants' Motions to Dismiss [Dkt. Nos. 14, 19, and 25] will be granted, and this civil action, including all claims and counterclaims, will be dismissed by an Order to be issued with this Memorandum Opinion.

Entered this 25th day of August, 2011.

Alexandria, Virginia

/s/

Leonie M. Brinkema
United States District Judge